IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

POLLOCK AND SONS, INC.　　　　　　 )
an Oregon Corporation,　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　 )
　　　　　　　 Plaintiff,　　　　　　　　 )　　TC-MD 120842N
　　　　　　　　　　　　　　　　　　　 )
　　　　 v.　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　 )
UMATILLA COUNTY ASSESSOR,　　　　 )
　　　　　　　　　　　　　　　　　　　 )
　　　　　　　 Defendant.　　　　　　　 )　　**DECISION**

　　　　Plaintiff appeals Defendant's assessment of property identified as Account 164176

(subject property) for the 2012-13 tax year.  Plaintiff asserts that the subject property was farm

personal property exempt from taxation under ORS 307.394(1).  A telephone trial was held on

May 29, 2013.  Garry L. Reynolds, Attorney at Law, appeared on behalf of Plaintiff.  Samuel

Pollock (Pollock), President of Plaintiff, testified on behalf of Plaintiff.  Paul Chalmers

(Chalmers), Director of Assessment and Taxation, appeared and testified on behalf of Defendant.

Plaintiff's Exhibits 1-16, and 18-19 were received without objection.  Defendant's Exhibits 1-2,

and 4-7 were received without objection.  Plaintiff objected to part of Defendant's Exhibit 3,[1]

which included a letter from Gregory J. Plass (Plass), Senior Appraiser Analysis, Department of

Revenue.  Plass was not available to testify at trial.  The court excluded that part of Defendant's

Exhibit 3 including Plass's letter.

## I.  STATEMENT OF FACTS

　　　　Pollock testified that the subject property is located in Hermiston, Oregon, at the same

site as Plaintiff's farm.  He testified that watermelons are grown on Plaintiff's farm.  Pollock

testified regarding the functions of the subject property and provided photographs of the subject

---

[1] The remainder of Defendant's Exhibit 3 is ORS 307.394 and OAR 150-307.394.

property taken in 2012. (*See* Ptf's Exs 1-14.) He testified that watermelons are brought in from the field in plastic bins or "field totes," which are "placed on the line." (Ptf's Exs 1-2.) Pollock testified that the watermelons are "dumped out of the field totes" onto the conveyor belt. (Ptf's Exs 3-4.) He testified that the watermelons move down the conveyor belt individually and travel under brushes that remove sand and dirt from the melons. (Ptf's Exs 5-8.) Pollock testified that the watermelons then cross a scale and are weighed. (Ptf's Ex 9.) He testified that Plaintiff's workers remove watermelons from the line and place them into cardboard bins, or "totes." (Ptf's Exs 10-12.) Pollock testified that, after the watermelons are placed into the cardboard totes, they are stacked in the warehouse for storage until trucks arrive to pick them up. (Ptf's Exs 13-14.) He testified that the warehouse is insulated and has fans to circulate the air.

Pollock testified that watermelons cannot be packed into the cardboard totes in the field because that would present a food safety violation. He testified that the subject property is not used to wash the watermelons. Pollock testified that the subject property is not used to label the watermelons or to place them into the cardboard totes; rather, Plaintiff's workers complete those tasks. He testified that workers will remove any broken watermelons from the line, but do not otherwise sort the watermelons. Pollock testified that the watermelons are not stored by Plaintiff for more than 15 days; the typical storage time by Plaintiff is five to seven days. He testified that the watermelons are shipped to warehouses, not to retail markets. Pollock testified that the subject property is used only for watermelons harvested at Plaintiff's farm.

Pollock testified that watermelons are placed into the cardboard totes according to their weight and a worker counts watermelons as they are placed into the cardboard totes. He testified that the cardboard totes of watermelons are sold "per bin" based on the anticipated number of watermelons in the bin. Pollock testified that Plaintiff is required by law to label the cardboard

totes with their origin and date picked. He testified that Plaintiff's workers label the cardboard totes and place stickers on the watermelons with numbers that can be used to identify the origin of the watermelons and the date the watermelons were picked.

Pollock testified that, following his conversation with Chalmers, he contacted the Oregon Department of Agriculture to inquire whether it would certify the subject property as "qualified machinery and equipment [] eligible for exemption under ORS 307.455." (*See* Ptf's Ex 18 at 2 (ORS 307.457).) He testified that the Department of Agriculture provided him with an excerpt of OAR 603-025-0010(10), defining "food processing." (Ptf's Ex 19.) That administrative rule states that food processing "does not mean the sorting, cleaning or water-rinsing of a food." (*Id.*)

Chalmers testified that, in his view, the subject property meets the definition of "processing" in OAR 150-307.394(1)(b), which defines "sorting" and "boxing" as "processing." He testified that there may be a gap between the statute granting exemption for "farm machinery and equipment" and the statute granting exemption for "food processing machinery and equipment." Chalmers testified that Plaintiff and other owners of machinery and equipment used to pack fresh produce may need to seek legislation to receive property tax exemption similar to the statute that provides property tax exemption for certain "[e]quipment used for the fresh shell egg industry that is directly related and reasonably necessary to produce, prepare, package and ship fresh shell eggs from the place of origin to market[.]" *See* ORS 307.397(1)(e).

## II. ANALYSIS

The question before the court is whether the subject property is entitled to property tax exemption for the 2012-13 tax year under ORS 307.394.[2] Under ORS 307.394(1)(a), an exemption is provided for "[f]arm machinery and equipment used primarily in the preparation of

---

[2] All references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to 2011.

land, planting, raising, cultivating, irrigating, harvesting or placing in storage of farm crops[.]"

The Oregon Supreme Court in *King Estate Winery Inc. v. Dept. of Rev* (*King Estate*) held that

"farm machinery and equipment" is "machinery and equipment used to cultivate farm land or to

raise animals."[3] 329 Or 414, 419, 988 P2d 369 (1999). The Court in *King Estate* held that only

farm machinery and equipment used for activities that "pertain to cultivating crops on land * * *"

were meant to be included under ORS 307.394 and found "no legislative intent to include

machinery and equipment used in fruit processing and fruit-product selling as part of the

definition of 'farm machinery and equipment.' "[4] *Id.* at 421.

The primary dispute in this case is whether the subject property is used for "processing"

rather than for "placing in storage of farm crops." As determined by the Court in *King Estate*,

machinery and equipment used for "processing" is not entitled to property tax exemption as

"farm machinery and equipment" under ORS 307.394.[5] The Department of Revenue has

promulgated an administrative rule that defines "[p]rocessing" and "[s]torage of farm crops" for

purposes of ORS 307.394 and provides examples. OAR 150-307.394 states:

"(1) Definitions:

"(a) 'Storage of farm crops' refers to the holding area in which a product is placed before processing begins.

"(b) 'Processing' is altering the crop in any way such as: washing, icing, sorting, grading, waxing, boxing, slicing, or cutting.

"(c) 'Primary' is the leading use or the use involving the highest

---

[3] *King Estate* applied *former* ORS 307.400. Prior to 2001, the identical language at issue in ORS 307.394(1)(a) was included in *former* ORS 307.400 (1999). *See* Or Laws 2001 ch 753 §§ 12, 15.

[4] The property at issue in *King Estate* was certain tangible personal property used in the production and sale of wine. 329 Or at 417.

[5] The court notes, however, that an exemption is allowed for certain food processing machinery and equipment under ORS 307.455. That exemption is available only upon certification of the machinery and equipment by the Oregon Department of Agriculture. ORS 307.455(2)(c).

percentage of time relative to all the various uses.

"Example: If an unlicensed farm vehicle is used 45 percent of the time to move cleaned, sorted, washed and bagged carrots ready for market (PRODUCT); 30 percent of the time to move freshly-picked carrots from the field to the warehouse or cold storage facility; and 25 percent of the time sitting idle, then the vehicle is used primarily in a nonexempt status and is fully assessable, even though that use is not 50 percent or more of the time available.

"(2) Machinery and equipment used to place a farm crop in storage are exempt from taxation. However, once processing of the crop is begun, it is no longer a crop, but a product. When the same machinery and equipment are used for both placing in storage and processing the primary use is what determines its assessment status.

"Example: Apples are picked and go directly into cold storage. This would be considered 'placing in storage of farm crops.' When these same apples are sorted, washed or boxed it becomes a product and placing back into cold storage until sold is not considered 'placing in storage of a farm crops.' At this point apples change from a crop to a product."

This court has previously reviewed the legislative history of the language "placing in storage," which was first added to a predecessor statute to ORS 307.394(1)(a). *See Dinsdale v. Marion County Assessor* (*Dinsdale*), TC-MD No 110891N, WL 1309162 (Apr 13, 2012). In its review of that legislative history, the court noted the testimony of Jim Scherzinger, Legislative Revenue Officer, that the addition of "placing in storage" was intended to exempt equipment such as "fork lifts" and other equipment used for storing crops. Tape recording, Senate Revenue and School Finance Committee, SB 398, April 8, 1981, Tape 71, Side B (testimony on proposed amendment SB 398-4). He testified that a line exists between harvesting, storing, and processing and that the inclusion of "placing in storage" was to clarify that equipment used for storing was separate and distinct from processing and more akin to harvesting. *Id.*

This case bears obvious similarities to the facts presented in *Dinsdale* and the parties discussed the court's decision in *Dinsdale* at trial. In *Dinsdale*, this court considered whether three "conveyers" and a "packing line" used to sort, inspect, pack, and label fresh blueberries

qualified for property tax exemption under ORS 307.394. *Dinsdale,* WL 1309162 at *1-2. The blueberries remained in the packing shed until they were shipped to market. The plaintiff in *Dinsdale* described the activity as "fresh packing." *Id.* at *2-3. In *Dinsdale*, as here, the Oregon Department of Agriculture declined to certify the property at issue as qualified "food processing" machinery and equipment. *Id.* at *1. The court in *Dinsdale* found that the property at issue was not used to place the blueberries into storage; rather, it was used "to sort and pack the blueberries, both of which are activities characterized as 'processing' under the [administrative] rule." *Id.* at *4. The court concluded that the property at issue was not "farm machinery and equipment" exempt from taxation under ORS 307.394(1)(a). *Id.* at *5.

Plaintiff argues that the subject property is distinguishable from that property at issue in *Dinsdale*. Plaintiff asserts that the function of the subject property is to take watermelons from the field, weigh them, and place them into storage. Defendant disagrees, noting that it granted property tax exemption for the plastic totes used to carry the watermelons from the field into the packing shed. It is difficult for the court to find any meaningful distinction between the use of the subject property in this case and the use of the property at issue in *Dinsdale*. The subject property is used to brush, weigh, label, and pack watermelons. Plaintiff suggested at trial that its workers, rather than the subject property, labeled the watermelons and placed them into cardboard totes. That may be, but the subject property is used in aid of that process and serves no other apparent function. As discussed in *Dinsdale*, "sorting" and "boxing" crops are both deemed "processing" under OAR 150-307.194. The court finds that the subject property is used primarily for "processing" watermelons rather than placing them into storage.

"[W]ashing, icing, sorting, grading, waxing, boxing, slicing, or cutting" are all defined as "processing" in OAR 150-307.194. "[S]orting, cleaning or water-rinsing of a food" are

DECISION  TC-MD 120842N                                                                                      6

specifically excluded from the definition of "food processing" in OAR 603-025-0010(10). If it was the intent of the legislature to provide property tax exemption for machinery and equipment such as the subject property in this case and the packing line in *Dinsdale*, then it appears that such property used to sort and pack fresh produce lies in a gap between the property exempt under ORS 307.394 and the property exempt under ORS 307.455. The gap between those statutes is due in part to the conflicting definitions of "processing" for purposes of those statutes. Chalmers testified that owners of fresh produce packing machinery and equipment may need to seek legislation to receive property tax exemption similar to the exemption provided for "[e]quipment used for the fresh shell egg industry that is directly related and reasonably necessary to produce, prepare, package and ship fresh shell eggs from the place of origin to market[.]" ORS 307.397(1)(e). The court cannot "insert what has been omitted" from ORS 307.394(1)(a). ORS 174.010.

### III. CONCLUSION

After careful consideration, the court concludes that the subject property is used primarily for "processing" as defined in OAR 150-307.394(1)(b). As a result, the subject property is not "farm machinery and equipment" entitled to exemption under ORS 307.394. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ____ day of July 2013.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

/ / /

*Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Allison R. Boomer on July 18, 2013. The Court filed and entered this document on July 18, 2013.*